UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KRISPY KREME DOUGHNUT                    :
CORPORATION AND NORTHEAST
DOUGHNUTS, LLC,                          :
      Plaintiffs,
            :

  -against-       **REPORT AND RECOMMENDATION**
            :
SATELLITE DONUTS, LLC,      10 Civ. 4272 (LAK)(KNF)
ALEXANDER MCCOURT, AND                   :
ERRINGTON WALTERS,
            :
      Defendants.
-------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LEWIS A. KAPLAN, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

On May 27, 2010, Krispy Kreme Doughnut Corporation ("Krispy Kreme") and Northeast

Doughnuts, LLC, commenced this action against Satellite Donuts, LLC ("Satellite"), Alexander

McCourt ("McCourt") and Errington Walters ("Walters"), seeking damages and equitable relief

for, inter alia, trademark infringement and breach of contract.  On March 10, 2011, your Honor

granted the plaintiffs' motion for judgment by default against McCourt and Walters and for an

entry of judgment as to liability against Satellite, on the consent of Satellite's bankruptcy trustee,

and referred the matter to the undersigned for an inquest on damages.  Before the Court are the

plaintiffs' inquest submissions, in accordance with your Honor's October 5, 2011 order: (i)

Plaintiff's Inquest Memorandum in Support of Plaintiff's Request for an Award of Damages

Against Defendants; (ii) Plaintiff's Proposed Findings of Fact and Conclusions of Law in

Support of Plaintiff's Request for an Award of Damages Against Defendants; (iii) an affidavit by

H. Clark Beeson, C.P.A. ("Beeson"), the vice president of Shared Services for Krispy Kreme,

responsible for the management and oversight of Krispy Kreme's accounts receivable due from

its franchisees, including Satellite, and the preparation of accounting reports, in Support of

Plaintiff's Proposed Findings of Fact and Conclusions of Law and Inquest Memorandum; and

(iv) an affidavit by Jonathan D. Pressment, Esq. ("Pressment"), the plaintiffs' attorney.

## FACTS DEEMED ADMITTED

Krispy Kreme, founded in 1937, operates and franchises internationally doughnut stores

known as Krispy Kreme Stores and Commissary Facilities.  Krispy Kreme Stores are retail sales

facilities with a certain degree of manufacturing capability.  Commissary Facilities are

manufacturing facilities for doughnuts and other products supplied to Krispy Kreme Stores.

Krispy Kreme's direct subsidiary, HDN Development Corporation owns Krispy Kreme's

trademarks, trade names and service marks, which Krispy Kreme has an exclusive license to use

and to sub-license in the United States.

On or about September 17, 2008, Krispy Kreme and Satellite entered into a franchise

agreement ("the Penn Station" agreement), for the operation of a doughnut shop at 2 Penn

Station, AMTRAK Rotunda, New York, New York, as well as the First Addendum to the Penn

Station agreement.  The Penn Station agreement contains a covenant against competition.  On

the same day, McCourt and Walters entered into an agreement ("the Penn Station Guarantee"),

guaranteeing personally Satellite's performance under the Penn Station agreement.

On or about September 18, 2009, Krispy Kreme and Satellite entered into a franchise

agreement ("the Baldwin" agreement), for the operation of a doughnut shop at 2162 Grand

Avenue, Baldwin, New York, as well as the First Addendum to the Baldwin agreement.  The

Baldwin agreement contains a covenant against competition.  On the same day, McCourt and

Walters entered into an agreement ("the Baldwin Guarantee"), guaranteeing personally Satellite's performance under the Baldwin agreement.

On or about July 10, 2009, Krispy Kreme converted $150,000 in the defendants' past due amounts for royalties owed for all the defendants' then-owned Krispy Kreme franchises into a promissory note (the "July 10, 2009 note") by which Satellite promised to pay Krispy Kreme certain amounts. The July 10, 2009 note provided for payments to be made to Krispy Kreme on Friday of each week, beginning on July 17, 2009, through and including July 6, 2012, in equal installments of principal and interest. The July 10, 2009 note was secured by a lien on all property associated with the defendants' franchise locations, including all personal property, machinery, equipment and fixtures present at the defendants' then-owned Krispy Kreme franchise locations (the "collateral").

At various times, the defendants owned and operated multiple Krispy Kreme franchises, including the Penn Station franchise, the Baldwin franchise, a franchise in Milford, Connecticut, a franchise in Farmingdale, New York, and another franchise located in Penn Station, New York, New York. Northeast Doughnuts, LLC assigned the lease for the Milford, Connecticut, franchise to Satellite (the "Milford" lease). Under the terms of the Milford lease, Northeast Doughnuts, LLC was secondarily liable on the lease, while Satellite was primarily liable. Satellite defaulted under the Milford lease upon the closing of the franchise in Milford. After receiving default notices, Krispy Kreme paid rent, under the Milford lease, for December 2009, and January and February 2010. Krispy Kreme also paid the property taxes required under the Milford lease.

Paragraph 13.2 of the Penn Station and Baldwin agreements require Satellite to make weekly royalty payments to Krispy Kreme. Paragraph 22.1 of the Penn Station and the Baldwin

agreements requires Satellite to make payments to the Brand Fund, established by Krispy Kreme for the creation, production and implementation of advertising, promotional, marketing and public relations programs and materials Krispy Kreme deems appropriate.  Paragraph 13.5 of the Penn Station and the Baldwin agreements provides that all amounts Satellite owes Krispy Kreme will bear interest after their due date at the rate of 1.5% per month or the highest contract rate of interest permitted by law, whichever is less.  Paragraph 26.2(i) of the Penn Station and the Baldwin agreements provides that Krispy Kreme shall have the right to terminate the respective agreement(s) if any past due amounts are not paid in full within ten days after notice is delivered to Satellite.

On May 12, 2010, Krispy Kreme delivered to Satellite, McCourt and Walters a Notice of Default and Demand for Payment of past due amounts, pursuant to the Penn Station and the Baldwin agreements, as well as the Penn Station and the Baldwin Guarantees.  The May 12, 2010 notice provided that the defendants had ten days from the date of the notice to cure the defaults or Krispy Kreme would have the right to terminate the Penn Station and the Baldwin agreements.  As of May 23, 2010, the defendants not having taken any action to cure the defaults set forth in the May 12, 2010 notice, Krispy Kreme terminated the Penn Station and the Baldwin agreements.  On the same date, Krispy Kreme delivered to Satellite a Notice to Cease and Desist that confirmed the termination of the Penn Station and the Baldwin agreements, and informed the defendants that Krispy Kreme was exercising its rights under paragraph 27.4 of the Penn Station and the Baldwin agreements to purchase any and all equipment used or usable at the Penn Station and the Baldwin franchises at its net book value.  The defendants failed to cease using Krispy Kreme's trade secrets, system and marks and to comply with their post-termination obligations under Section 27 of the Penn Station and the Baldwin agreements.  Paragraph 29.4 of

the Penn Station and the Baldwin agreements provides that Krispy Kreme is entitled to attorneys' fees and expenses for litigation concerning a breach of the Penn Station and the Baldwin agreements.

The defendants defaulted on their lease obligations at the Penn Station and Baldwin franchises.  Krispy Kreme is a guarantor of the Penn Station franchise lease.  As a guarantor, Krispy Kreme made a payment to the landlord of the Penn Station franchise, on or about May 18, 2010.

The defendants supplied Krispy Kreme doughnuts to an unauthorized Krispy Kreme store in Asbury Park, New Jersey.  The Asbury Park store had no franchise agreement with Krispy Kreme.

Satellite defaulted on payments under the July 10, 2009 note.  On May 20, 2010, Krispy Kreme sent Satellite a Notice of Default and Notice of Intent to Accelerate Debt, informing Satellite of its default under the July 10, 2009 note and stating that, unless the defaults are cured by June 1, 2010, Krispy Kreme intends to accelerate all amounts due under the July 10, 2009 note and demand immediate payment.  The defendants took no action to cure the defaults under the July 10, 2009 note.

## PLAINTIFFS' INQUEST SUBMISSIONS

The plaintiffs contend that "[u]nder New York law, courts should enforce the agreements of contracting parties in accordance with those parties' intentions, as evidenced by the language of the contract."  They maintain that "[e]ach of the Franchise Agreements for the Satellite store locations at Penn Station, Baldwin, New York and Milford, Connecticut" contains "nearly identical terms and are identical in all aspects relevant to the financial commitments which support this application for the entry of judgment."  The personal guarantees "for each of the

Satellite Franchise Agreements" provide that McCourt and Walters jointly and severally

guarantee all Satellite's performance and payment obligations to Krispy Kreme.  Additionally,

"Section 27.1 of the Franchise Agreements states" that the defendants must pay Krispy Kreme

all royalties, Brand Fund contributions, amounts owed for purchases from Krispy Kreme or its

affiliates, interest due on any of the foregoing and all other amounts owed which are unpaid

within ten days after the effective date of termination "of the Franchise Agreements."

 According to the plaintiffs, "the Franchise Agreements," which the plaintiffs contend

include the Penn Station agreement, the Baldwin agreement and the Milford franchise

agreement, "were terminated as of May 23, 2010," and the amounts became due as of June 2,

2010.  The plaintiffs seek $1,125,091.97, as follows:

| | |
|---|---|
| Products, Ingredients and Advance Amounts Due: | $345,820.08 |
| Royalty Fees Due: | $45,650.98 |
| Brand Fund Fees Due: | $6,206.76 |
| Amount Due Under Note Dated July 10, 2009: | $129,399.15 |
| Costs: | $34,160.00 |
| Attorneys Fees: | $563,855.00 |
| Total Amount: | $1,125,091.97 |

 The plaintiffs maintain that the production of Krispy Kreme doughnuts required that

Satellite purchases Krispy Kreme ingredients and paper goods and related products bearing

Krispy Kreme proprietary marks from Krispy Kreme.  The defendants ordered ingredients and

paper products from Krispy Kreme throughout the period during which the Satellite stores were

in operation.  Krispy Kreme advanced funds to the defendants to cover certain costs of their

operation, such as the costs of supplies for the defendants' offices and stores.  The plaintiffs

contend that Krispy Kreme made payments on behalf of the defendants because the defendants

failed to fulfill contractual obligations for which Krispy Kreme could be held responsible,

including rental and tax obligations.

The plaintiffs assert that, pursuant to Section 13.3 of "the Franchise Agreements," the defendants are obligated to pay Krispy Kreme "for purchases of production equipment, fixtures, furnishings, doughnut mixes and other ingredients, packing and all supplies purchased from Franchisor and any interest charges due thereon." They contend that under Section 13.5 of "the Franchise Agreements" the defendants are responsible to pay Krispy Kreme all sums due to Krispy Kreme or Krispy Kreme's extension of credit to the defendants. Moreover, the defendants are obligated to reimburse Krispy Kreme for products, ingredients, materials and advances, pursuant to Sections 26 and 28 of the "Defendants' franchise agreements." According to the plaintiffs, the defendants owe a total of $345,820.08 for products, ingredients and advances received from Krispy Kreme.

The plaintiffs contend that the defendants' "respective franchise agreements" provide that the defendants shall make weekly royalty payments to Krispy Kreme. They maintain that the defendants owe them $45,650.98 in royalty fees.

The plaintiffs assert that Section 22.1 of the defendants' "franchise agreements" provides that the defendants are responsible for payments to Krispy Kreme of Brand Fund fees, owed for creation, production and implementation of advertising, promotional, marketing and public relations programs and materials that Krispy Kreme deems appropriate. The plaintiffs maintain that the defendants owe them $6,206.76 in Brand Fund fees. They contend that, as of December 31, 2010, the defendants owe Krispy Kreme $129,399.15 under the terms of the July 10, 2009 note.

According to the plaintiffs, Section 29.4 of "the Franchise Agreements" provides: "If [Krispy Kreme] claims in any judicial proceeding that [Satellite] owes [Krispy Kreme] or any of

its Affiliates money or that [Satellite] has otherwise breached this Agreement and [Krispy

Kreme] prevails on such claims, then Franchisor shall be awarded its costs and expenses

incurred in connection with such proceedings, *including reasonable attorneys' fees*."

The plaintiffs maintain that Section 28.6 of "the Franchise Agreements" provides:

> [Satellite] agrees to indemnify [Krispy Kreme], its Affiliates and their respective
> directors, officers, employees, shareholders, members, managers, agents, successors
> and assigns . . . and to hold the Indemnified Parties harmless to the fullest extent
> permitted by law, from any and all losses *and expenses* (as defined below) incurred
> in connection with any litigation or other form of adjudicatory procedure, claim,
> demand, investigation, or formal or informal inquiry (regardless of whether it is
> reduced to judgment) or any settlement thereof which arises directly or indirectly
> from, or as a result of, a claim of a third party against any one or more of the
> Indemnified Parties, including those in connection with (a) Franchisee's failure to
> perform or breach of any covenant, agreement, term or provision of this [Franchise
> Agreement [sic] . . . The term "losses and expenses" includes compensatory,
> exemplary, and punitive damages; fines and penalties; *attorneys' fees; experts' fees;*
> *court costs; costs associated with investigating and defending against claims;*
> *settlement amounts* . . . *and all other costs associated with any of the foregoing*
> *losses and expenses. . . .*

According to the plaintiffs, the "Personal Guarantees" provide for Krispy Kreme's

recovery of all attorneys fees and costs from the individual defendants because they are jointly

and severally liable and personally bound by each provision in "the Franchise Agreements,"

including "the payment and performance of all agreements set forth in the Franchise

Agreements."  The plaintiffs contend that the personal guarantee for the Baldwin agreement

provides: "Expenses. If either party commences a legal action against another party arising out

of this Personal Guarantee, the prevailing party will be entitled to recover its costs, including

attorneys' fees, against the non-prevailing party."  According to the plaintiffs, the July 10, 2009

note provides: "Upon default the holder of this Note may employ an attorney to enforce the

holder's rights and remedies and the Satellite, principal, surety, guarantor and endorser of this

Note hereby agree to pay to the holder *reasonable attorneys fees, plus all other reasonable expenses* incurred by the holder in exercising any of the holder's rights and remedies upon default."

The plaintiffs contend that, on June 23, 2010, Satellite filed for bankruptcy, in the United States Bankruptcy Court for the Southern District of New York, Case No. 10-13333 (SMB). They maintain that, as a result of Satellite filing for bankruptcy, Krispy Kreme was forced to pursue its claims against all defendants in the context of the Satellite bankruptcy case, by: (a) filing an adversary proceeding against the defendants in the Satellite bankruptcy that arose from the same claims set forth in this action; (b) moving for a modification of the automatic stay to permit this action to proceed; and (c) litigating various issues in connection with the bankruptcy proceeding.

The plaintiffs assert that additional litigation arose over Krispy Kreme's rights to obtain the collateral pledged to it by Satellite as security for the amounts due under the July 10, 2009 note.  According to the plaintiffs, the Satellite bankruptcy trustee agreed to abandon the collateral to Krispy Kreme by notice dated August 31, 2010, filed in the bankruptcy case. However, the plaintiffs contend, the former landlord of the Baldwin franchise location, Saffron Developers LLC ("Saffron"), filed objections and demanded payment from Krispy Kreme in return for the collateral, and Krispy Kreme was forced to litigate its claims over the collateral. The plaintiffs contend that, on December 3, 2010, Krispy Kreme filed an action against Saffron in the New York State Supreme Court for Nassau County, in connection with the collateral, which resulted in a settlement agreement between Krispy Kreme and Saffron.

The plaintiffs contend that they had to assert and defend against claims in no less than four separate actions as a direct result of the defendants' breaches of "the Franchise

Agreements": (1) the instant action; (2) the Satellite's bankruptcy case, In re Satellite Donuts, LLC, Case No. 10-13333 (Bankr. S.D.N.Y.); (3) Krispy Kreme Doughnut Corp. v. Saffron Developers, LLC, Index No. 2285/10 (Sup. Ct. Nassau County) ("the Replevin Action"); and (4) Saffron Developers, LLC v. Krispy Kreme Doughnut Corp., Index No. 22184/10 (Sup. Ct. Nassau County) ("the Saffron Action").  Krispy Kreme's outside counsel, Haynes and Boone, LLP, seek $563,855.00 in attorneys' fees and $34,160.00 in costs incurred in all four actions through January 31, 2011.

In support of the plaintiffs' request for damages, the plaintiffs submitted affidavits by Beeson and Pressment, accompanied by exhibits.  The exhibits attached to Beeson's affidavit include, inter alia, Exhibit A, a summary of four categories of the amounts due by the defendants with respect to three franchises,"Two Penn Plaza, NY," "Milford, CT" and "Baldwin, NY": (1) "Product/ingredients/advances Due"; (2) "Royalty Fees Due"; (3) "Brand Fund Fees Due" and (4) "Total Accounts Receivable."  The exhibits attached to Pressment's affidavit include, inter alia: (i) Exhibit B, the Penn Station agreement; (ii) Exhibit C, the Penn Station Guarantee; (iii) Exhibit D, the Baldwin agreement; (iv) Exhibit E, the Baldwin Guarantee; (v) Exhibit F, the July 10, 2009 note; (vi) Exhibit FF, the Milford franchise agreement; (vii) Exhibit GG, the Personal Guarantee related to the Milford franchise agreement; (viii) Exhibit JJ, copies of the professional background of each attorney from Haynes and Boone, LLP, who has assisted in the four litigations mentioned above, and (ix) Exhibit KK, invoices containing descriptions of the work completed by the Haynes and Boone, LLC professionals.  Exhibit KK shows that eight partners, nine associates, three paralegals and two attorneys of counsel worked 1,233.40 hours, at hourly rates ranging between: (a) $520 and $750 for partners; (b) $270 and $425 for associates; (c) $220 and $250 for paralegals; and (d) $516.90 and $685 for attorneys of counsel.

With respect to damages under the Lanham Act, the plaintiffs contend that

the brief period in which Defendants operated their Krispy Kreme franchise locations following receipt of the May 23, 2010 Notice to Cease and Desist coupled with the scarcity of records maintained by Defendants for sales made during this period makes it difficult, if not impossible, for Krispy Kreme to quantify its damages for infringement beyond the costs of the action.

Krispy Kreme seeks "a total of no less than $3247.52" in costs, as follows: (a) $350, the cost of filing; (b) $251.51, the cost of the transcript of the June 16, 2010 oral argument; and (c) $2,646.00, fees and disbursements for printing and copying. The plaintiffs contend that "New York Civil Practice Law and Rules (CPLR") § 5001(a) mandates that prejudgment interest be recovered 'upon a sum awarded because of a breach of performance of a contract,'" and "[t]he statutory prejudgment interest rate applies to a claim for liquidated damages." According to the plaintiffs, "[i]n New York, the applicable interest rate is nine percent per year." The plaintiffs seek post-judgment interest, pursuant to 28 U.S.C. § 1961.

## DISCUSSION

### *Legal Standard*

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). Establishing the appropriate amount of damages involves two steps: (1) "determining the proper rule for calculating damages on . . . a claim"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." Id. Rule 55(b)(2) of the Federal Rules of Civil Procedure "leaves the decision of whether a hearing is necessary[, for determining damages,] to the discretion of the district court" and "as long as . . . there [is] a basis for the

damages specified in a default judgment," the court is not required to hold a hearing.  Fustok v. Conticommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).  When assessing damages, a court cannot rely on the plaintiff's statement of the damages; rather, damages must be established "with reasonable certainty."  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997).

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

> The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action.  It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2663 (3d ed. 1998).  "[N]otice that comes at the inquest stage" is not sufficient in itself to satisfy the notice requirement of Rule 54(c) and to "permit a plaintiff in a default action to recover for damages not claimed in the complaint."  Silge v. Merz, 510 F.3d 157, 161 (2d Cir. 2007).

Where a violation of the Lanham Act is established, a plaintiff is entitled to recover: "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a).  Costs include:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed

12

experts, compensation of interpreters, and salaries, fees, expenses, and costs
of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

"Interest shall be allowed on any money judgment in a civil case recovered in a district court."

28 U.S.C. § 1961(a).

### *Application of Legal Standard*

<u>Contractual Damages</u>

The plaintiffs asserted breach of the following agreements in their verified complaint:

(1) the Milford lease; (2) the Penn Station agreement, accompanied by the Penn Station

Guarantee; (3) the Baldwin agreement, accompanied by the Baldwin Guarantee; and (4) the July

10, 2009 note.  The plaintiffs seek damages under these contracts, contending that "[u]nder New

York law, courts should enforce the agreements of contracting parties in accordance with those

parties' intentions, as evidenced by the language of the contract."

The Penn Station and the Baldwin agreements contain an identical Section 29.1, which

states:

> This Agreement and all issues arising from or relating to this Agreement shall be
> governed by and constructed under the laws of the State of North Carolina, provided
> the foregoing shall not constitute a waiver of Franchisee's rights under any
> applicable franchise law of another state.  Otherwise, in the event of any conflict of
> law, North Carolina law will prevail, without regard to the application of North
> Carolina conflict of law principles, except that any North Carolina law regulating the
> sale of franchises or business opportunities or governing the relationship of a
> franchisor and its franchisees will not apply unless its jurisdictional requirements are
> met independently without reference to this section.

The July 10, 2009 note contains the following provision: "This note is to be governed and

construed in accordance with the laws of the State of North Carolina."  The plaintiffs failed to

submit a copy of the Milford lease.

The Penn Station agreement, the Baldwin agreement and the July 10, 2009 note contain clear and unambiguous terms providing that North Carolina law governs any issues in connection with those documents.  It is unclear why the plaintiffs seek contractual damages based on New York law, including pre-judgment interest, since New York law does not apply to breach of contracts governed by North Carolina law.  The plaintiffs failed to seek damages pursuant to North Carolina law or to make arguments explaining why they are entitled to damages under North Carolina law.  Moreover, they failed to provide the Milford lease or identify what law governs it or what its material terms are that would permit recovery of damages.  Therefore, the plaintiffs failed to establish that, pursuant to North Carolina law, any damages, including attorneys' fees, are warranted under the Penn Station agreement, the Baldwin agreement and the July 10, 2009 note, and they did not establish that damages are warranted under the Milford lease, whose terms remain unknown to the Court.

Furthermore, the verified complaint asserts breach of contract with respect to four agreements **only**:  (1) the Milford lease; (2) the Penn Station agreement, accompanied by the Penn Station Guarantee; (3) the Baldwin agreement, accompanied by the Baldwin Guarantee; and (4) the July 10, 2009 note.  No allegations are made in the verified complaint in connection with the Milford franchise agreement or breach of that agreement.  The plaintiffs' attempt to add breach of the Milford franchise agreement claim to their verified complaint at the inquest stage is inappropriate, violative of Rule 54(c), and implicates Rule 11 of the Federal Rules of Civil Procedure.

To illustrate by way of an example, the plaintiffs in their proposed findings of fact state: "Paragraph 13.2 of the Penn Station Franchise Agreement, the Baldwin Franchise Agreement and the Milford Franchise Agreement requires Satellite to make weekly royalty payments to

Krispy Kreme.  Compl. at ¶ 36; Pressment Aff., Exs. B, D and FF at § 13.2."  However, paragraph 36 of the verified complaint, cited by the plaintiffs in support of their proposed factual findings, states: "Paragraph 13.2 of the Penn Station Franchise Agreement and the Baldwin Franchise Agreement requires Satellite to make a weekly royalty payment to Krispy Kreme." Not only do paragraphs 36 through 39 of the verified complaint, contained within the subheading "The Penn Station Franchise Agreement and the Baldwin Franchise Agreement," involve solely the Penn Station and the Baldwin agreements, and **not the Milford franchise agreement** as the plaintiffs state in their proposed findings of fact, but paragraphs 40 through 43 of the verified complaint also involve solely the Notice of Default and Demand for Payment and the Notice to Cease and Desist terminating the Penn Station and the Baldwin agreements, not a notice terminating the Milford franchise agreement.  In fact, although the plaintiffs submitted, on this inquest, the Milford franchise agreement (Pressment Aff., Ex. FF) and Personal Guarantee related to the Milford franchise agreement (Pressment Aff., Ex. GG), they did not submit any evidence that the defendants defaulted under the Milford franchise agreement or that the Milford franchise agreement was terminated based on default or any other ground.

Notwithstanding the allegations in the verified complaint that the agreements at issues in this action are: (1) the Milford lease; (2) the Penn Station agreement, accompanied by the Penn Station Guarantee; (3) the Baldwin agreement, accompanied by the Baldwin Guarantee; and (4) the July 10, 2009 note, the plaintiffs add further the Milford franchise agreement to their findings of fact when they state: "Paragraph 29.4 of the Penn Station Franchise Agreement, the Baldwin Franchise Agreement and the Milford Franchise Agreement provides that Krispy Kreme is entitled to its attorneys' fees and expenses for litigation concerning a breach of the Penn Station Franchise Agreement or the Baldwin Franchise Agreement.  Compl. at ¶ 44;

Pressment Aff., Exs. B, D and FF at § 29.4." However, paragraph 44 of the verified complaint, to which the plaintiffs make citation in support of their proposed factual findings, alleges: "Paragraph 29.4 of the Penn Station Franchise Agreement and the Baldwin Franchise Agreement provides that Krispy Kreme is entitled to attorneys' fees and expenses for litigation concerning a breach of the Penn Station Franchise Agreement or the Baldwin Franchise Agreement."

That the only franchise agreements at issue in the verified complaint are the Penn Station and the Baldwin agreements, and not the Milford franchise agreement, is also clear from the exhibits attached to the verified complaint; the Milford franchise agreement is not attached to the verified complaint, but the Penn Station and the Baldwin agreements are. Moreover, the plaintiffs' application for an Order to Show Cause for Preliminary Injunction and Temporary Restraining Order (Docket Entry No. 3), which resulted in the issuance of the temporary restraining order by a district judge sitting in Part I of this court, and the scheduling of an evidentiary hearing on the preliminary injunction, demonstrates that the Penn Station and the Baldwin agreements are the only franchise agreements at issue in the verified complaint, not the Milford franchise agreement. The Milford franchise agreement is not a subject of the verified complaint and, consequently, of the March 10, 2011 order granting to the plaintiff "judgment as to liability."

The plaintiffs raised the Milford franchise agreement and breach of the Milford franchise agreement for the first time in their inquest submissions. They attached the Milford franchise agreement as Exhibit FF, as well as the Personal Guarantee related to the Milford franchise agreement as Exhibit GG, to Pressment's affidavit, and included the allegations about the Milford franchise agreement in their proposed findings of fact and conclusions of law, as well as their memorandum of law. Most disturbingly, the plaintiffs' damages calculation, presented

16

through Beeson's affidavit, includes damages based on a claim that was never alleged in the verified complaint—breach of the Milford franchise agreement—namely, the plaintiffs seek "Product Ingredients/Merchandise/Advances Due," "Royalty Fees," and "Brand Fund Fees," all related to "Satellite Donuts # 861 - Milford, CT."

The plaintiffs' request for damages based on a claim that was not asserted in the verified complaint violates Rule 54(c)'s notice requirement because the plaintiff's request for damages, for breach of the Milford franchise agreement alleged in their inquest submissions, is different in kind from and exceeds the damages sought in the verified complaint, more specifically, damages based on the breach of two franchise agreements, the Penn Station and the Baldwin agreements, not three franchise agreements.  The Court has serious concerns that the plaintiffs' conduct is in contravention of Rule 11 of the Federal Rules of Civil Procedure, because the plaintiffs' inquest submissions appear to be presented for an improper purpose, namely, to obtain damages on a claim that was not asserted in the verified complaint.  See Fed. R. Civ. P. 11(b)(1).

The Lanham Act Damages

The plaintiffs seek costs, based on the Lanham Act claim, as follows:

(i) the costs of filing ($350.00) (August 5, 2010 Invoice No. 20524551); (ii) the costs of the transcript of the June 16, 2010 oral argument ($251.52) (August 5, 2010 Invoice No. 20524554; and (iii) fees and disbursements for printing and copying ($2,646.00) (from Invoice Nos. 20524551 and 20524554 (August 5, 2010) and No. 20552265 (February 10, 2011)) – a total of no less than $3,247.52.

Inasmuch as the March 10, 2011 order awarded a judgment to the plaintiffs on liability, which included the plaintiffs' Lanham Act claim, the plaintiffs are entitled to costs under the Lanham Act, pursuant to 15 U.S.C. § 1117(a).  The plaintiffs submitted invoices evidencing their costs.  The plaintiffs are entitled to recover $350 for the filing fee associated with this action, as evidenced by their invoice No. 20524551, dated August 5, 2010.

17

In support of their request for $251.52 in costs for the transcript of the June 16, 2010 oral argument, the plaintiffs refer to their August 5, 2010 invoice No. 20524554.  However, the plaintiff's August 5, 2010 invoice No. 29524554 contains the following entry, dated "5/27/10": "Transcripts and Tapes of Hearing - Payee: Jonathan Pressment SOUTHERN DISTRICT REPORTERS P.C.," in the amount of $251.52.  This entry does not support the plaintiff's request for the cost of the transcript of the June 16, 2010 oral argument because: (a) the entry on the plaintiffs' August 5, 2010 invoice No. 29524554 is dated "5/27/10," which precedes the date of the oral argument for which the transcript cost is sought; (b) the entry on the plaintiff's August 5, 2010 invoice No. 29524554 describes the cost as "Transcripts and Tapes of Hearing" without indicating the date of the hearing; and (c) the entry on the plaintiff's August 5, 2010 invoice No. 29524554 describes the cost as "Transcripts and Tapes of Hearing," whereas the cost sought by the plaintiffs is for "the transcript," not the transcript and the tapes.  Therefore, the plaintiff's request for $251.52 in costs for the transcript of the June 16, 2010 oral argument is not warranted, because it is not supported by the evidence.

The plaintiffs seek $2,646.00 as "disbursements for printing and copying," referring to their invoice Nos. 20524551 and 20524554, dated August 5, 2010, and No. 20552265, dated February 10, 2011.  These invoices support the plaintiffs' request for printing and copying.  The plaintiffs are entitled to  $2,646.00 for printing and copying.  Accordingly, the plaintiffs are entitled to recover $2,996.00 in costs, pursuant to 15 U.S.C. § 1117(a).

Post-Judgment Interest

The plaintiffs are entitled to the post-judgment interest, to be calculated pursuant to 28 U.S.C. § 1961.

18

## RECOMMENDATION

For the foregoing reasons, I recommend that: (a) $2,996.00 be awarded to the plaintiffs, together with post-judgment interest; and (b) the plaintiffs show cause to your Honor why Rule 11 of the Federal Rules of Civil Procedure has not been violated by their conduct described above.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 2240, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
      February 22, 2013

Respectfully submitted,

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

19